IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RICHARD B. LEWIS,                          :
                                           :
            Petitioner,                    :
                                           :
      v.                                   :   Civil Action No. 18-934-RGA
                                           :
ROBERT MAY, Warden, and                    :
ATTORNEY GENERAL OF THE                    :
STATE OF DELAWARE,                         :
                                           :
            Respondents.[1]                :

## MEMORANDUM OPINION

Richard B. Lewis, *Pro se* Petitioner.

Brian L. Arban, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

August 21, 2021
Wilmington, Delaware

---

[1] Warden Robert May replaced former Warden Dana Metzger, an original party to this case. *See* Fed. R. Civ. P. 25(d).

/s/ Richard G. Andrews
ANDREWS, UNITED STATES DISTRICT JUDGE:

Petitioner Richard B. Lewis is an inmate in custody at the James T. Vaughn Correctional Center in Smyrna, Delaware. Petitioner filed an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 and a Memorandum in Support (hereinafter collectively referred to as "Petition"). (D.I. 2; D.I. 4) The State filed Answer in opposition. (D.I. 20) For the reasons discussed, the Court will dismiss the Petition as barred by the limitations period prescribed in 28 U.S.C. § 2244.

I.  BACKGROUND

On June 12, 2006, a New Castle County grand jury indicted Petitioner on three counts of first degree robbery, two counts of attempted first degree robbery, four counts of possession of a deadly weapon during the commission of a felony ("PDWDCF"), and one count each of second degree robbery, second degree burglary, and misdemeanor theft. (D.I. 23-3 at 7-12) Petitioner's trial began in the Delaware Superior Court in November 2006. (D.I. 20 at 1) When some of the State's necessary witnesses failed to appear to testify, the Superior Court dismissed two of the weapons counts, one count each of first degree robbery and attempted first degree robbery, and the second degree burglary, misdemeanor theft, and second degree robbery counts. (D.I. 23-3 at 13-15) On November 15, 2006, a Delaware Superior Court jury found Petitioner guilty of attempted first degree robbery and two counts each of first degree robbery and PDWDCF. (D.I. 20 at 2) The Superior Court sentenced Petitioner as follows: (1) for the first degree robbery convictions, to eight years at Level V incarceration, suspended after six years for probation; (2) for the PDWDCF convictions, to a total of four years at Level V incarceration; and (3) for the attempted first degree robbery conviction, to three years at Level V. (D.I. 20 at 2; D.I. 21-4 at 69); *see Lewis v. State*, 941 A.2d 1018 (Table), 2007 WL 4372815, at *1 (Del. Dec. 14, 2007).

The Delaware Supreme Court affirmed Petitioner's convictions and sentence on December 14, 2007.  *See Lewis*, 2007 WL 4372815, at *3.

On January 22, 2008, Petitioner filed in the Superior Court a *pro se* motion for postconviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 21-7)  The Superior Court denied the Rule 61 motion on April 30, 2008, and Petitioner did not appeal that decision.  (D.I. 20 at 2); *see State v. Lewis*, 2008 WL 1921762, at *2 (Del. Super. Ct. Apr. 30, 2008).

Petitioner filed a second *pro se* Rule 61 motion on February 3, 2012.  (D.I. 21-8)  A Delaware Superior Court Commissioner issued a report recommending that the Rule 61 motion be summarily dismissed.  (D.I. 21-9)  On March 15, 2012, the Superior Court adopted the report and denied Petitioner's second Rule 61 motion because it was untimely, repetitive, and included claims that Petitioner could have raised on direct appeal or in a prior postconviction proceeding. (D.I. 21-10)  Petitioner did not appeal that decision.

On June 10, 2016, Petitioner filed a motion for sentence reduction, which the Superior Court denied on August 5, 2016.  (D.I. 21-11; D.I. 21-12)  Petitioner did not appeal that decision.

Petitioner filed a third *pro se* Rule 61 motion on March 22, 2017 (D.I. 21-13), which the Superior Court dismissed on April 13, 2017 as untimely, second or successive, and meritless (D.I. 21-14).  Petitioner did not appeal that decision.

On May 29, 2018, Petitioner filed his fourth *pro se* Rule 61 motion.  (D.I. 21-15)  The Superior Court summarily dismissed that Rule 61 motion on June 14, 2018 as untimely, second or successive, and because it raised claims previously adjudicated by the courts.  (D.I. 21-16)  Petitioner did not appeal that decision.

In June 2018, Petitioner filed the instant Petition asserting the following three grounds for relief: (1) he is mentally incompetent, and his trial, conviction and sentencing violated his constitutional rights (D.I. 2 at 6); (2) defense counsel provided ineffective assistance by not investigating or asserting a defense based on Petitioner's mental illness (D.I. 4 at 2-6); and (3) he is actually innocent (D.I. 4 at 7).

## II.   ONE YEAR STATUTE OF LIMITATIONS

AEDPA prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  AEDPA's limitations period is subject to statutory and equitable tolling. *See Holland v. Florida*, 560 U.S. 631 (2010) (equitable tolling); 28 U.S.C. § 2244(d)(2) (statutory tolling).

3

Petitioner does not assert, and the Court cannot see, any facts triggering the application of § 2244(d)(1)(B),(C), or (D). Therefore, the one-year period of limitations began to run when Petitioner's conviction became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a state prisoner appeals a state court judgment but does not seek certiorari review, the judgment of conviction becomes final, and the statute of limitations begins to run, upon expiration of the ninety-day time period allowed for seeking certiorari review. *See Kapral v. United States*, 166 F.3d 565, 575, 578 (3d Cir. 1999); *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999). In this case, the Delaware Supreme Court affirmed Petitioner's convictions on December 14, 2007, and he did not file a petition for a writ of certiorari in the United States Supreme Court. As a result, Petitioner's convictions became final on March 13, 2008. Applying the one-year limitations period to that date, Petitioner had until March 13, 2009 to timely file a habeas petition. *See Wilson v. Beard*, 426 F.3d 653, 662-64 (3d Cir. 2005) (Fed. R. Civ. P. 6(a) applies to AEDPA's limitations period); *Phlipot v. Johnson*, 2015 WL 1906127, at *3 n. 3 (D. Del. Apr. 27, 2015) (AEDPA's one-year limitations period is calculated according to the anniversary method, *i.e.*, the limitations period expires on the anniversary of the date it began to run). Petitioner, however, did not file the instant Petition until June 23, 2018,[2] a little more than nine years after that deadline. Thus, the Petition is time-barred and should be dismissed, unless the limitations period can be statutorily or equitably tolled. *See Jones,* 195 F.3d at 158. The Court will discuss each doctrine in turn.

---

[2]Pursuant to the prisoner mailbox rule, the Court adopts June 23, 2018 as the filing date because that is the date on Petitioner's certificate of mailing. *See Longenette v. Krusing*, 322 F.3d 758, 761 (3d Cir. 2003) (the date on which a prisoner transmitted documents to prison authorities for mailing is to be considered the actual filing date).

4

### A. Statutory Tolling

Pursuant to § 2244(d)(2), a properly filed state post-conviction motion tolls AEDPA's limitations period during the time the motion is pending in the state courts, including any post-conviction appeals, provided that the motion was filed and pending before the expiration of AEDPA's limitations period. *See Swartz v. Meyers*, 204 F.3d 417, 420-24 (3d Cir. 2000). The limitations period is also tolled for the time during which an appeal from a post-conviction decision could be filed even if the appeal is not eventually filed. *Id*. at 424. The limitations period, however, is not tolled during the ninety days a petitioner has to file a petition for a writ of certiorari in the United States Supreme Court regarding a judgment denying a state post-conviction motion. *See Stokes v. Dist. Att'y of Philadelphia*, 247 F.3d 539, 542 (3d Cir. 2001).

Here, Petitioner filed his first Rule 61 motion after the conclusion of his direct appeal but during the ninety-day period in which he could have sought certiorari review of his convictions by the United States Supreme Court. As a result, AEDPA's limitations period did not begin to run until his Rule 61 motion was no longer pending. Since Petitioner did not appeal the Superior Court's denial of his Rule 61 motion on April 30, 2008, AEDPA's limitations period began to run on May 30, 2008, the date on which the thirty-day appeal period expired. The limitations clock started to run on May 31, 2008, and ran the entire one year without interruption until the limitations period expired on June 1, 2009.[3] Given these circumstances, none of Petitioner's three other Rule 61 motions statutorily toll the limitations period because they were filed after the expiration of the limitations period. Therefore, the instant Petition is time-barred, unless equitable tolling applies.

---

[3] The limitations period actually ended on May 30, 2009, which was a Saturday. Therefore, Petitioner had until the end of the day on Monday June 1, 2009 to timely file a habeas petition. *See* Fed. R. Civ. P. 6(a).

5

### B. Equitable Tolling

The one-year limitations period may be tolled for equitable reasons in rare circumstances when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649-50. With respect to the diligence inquiry, a petitioner's obligation to exercise diligence "does not pertain solely to the filing of the federal habeas petition, rather it is an obligation that exists during the period [the inmate] is exhausting state remedies as well." *LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir. 2005). Equitable tolling is not available where the late filing is due to the petitioner's excusable neglect. *See Holland*, 560 U.S. at 651-52. As for the extraordinary circumstance requirement, "the relevant inquiry is not whether the circumstance alleged to be extraordinary is unique to the petitioner, but how severe an obstacle it creates with respect to meeting AEDPA's one-year deadline." *Pabon v. Mahanoy*, 654 F.3d 385, 401 (3d Cir. 2011). Notably, an extraordinary circumstance will only warrant equitable tolling if there is "a causal connection, or nexus, between the extraordinary circumstance [] and the petitioner's failure to file a timely federal petition." *Ross v. Varano*, 712 F.3d 784, 803 (3d Cir. 2013).

Here, Petitioner appears to assert that the limitations period should be equitably tolled because he is mentally incompetent and "severely" mentally ill. (D.I. 4 at 7) "Mental incompetence," however, "is not a *per se* reason to toll a statute of limitations. Rather, the alleged mental incompetence must somehow have affected the petitioner's ability to file a timely habeas petition." *Nara v. Frank*, 264 F.3d 310, 320 (3d Cir. 2001) (citation omitted), *overruled in part on other grounds by Carey v. Saffold*, 536 U.S. 214 (2002). Although the Third Circuit

6

has not set out specific criteria for determining when a petitioner's incompetence affected his ability to timely file a habeas petition, other courts in this Circuit take a totality of circumstances approach and consider the following factors: (1) whether the petitioner was adjudicated incompetent and, if so, the timing of the adjudication in relation to the habeas statutory period; (2) whether the petitioner was institutionalized for his mental impairment; (3) whether the petitioner handled or assisted in other legal matters which required action during the federal limitations period; and (4) whether the petitioner supported his allegations of impairment with extrinsic evidence such as evaluations and/or medications. *See Champney v. Sec'y Pa. Dep't of Corr.*, 469 F. App'x 113, 118 (3d Cir. 2012); *Griffin v. Stickman*, 2004 WL 1821142, at *6 (E.D. Pa. Aug. 11, 2004) (collecting cases).

Petitioner has not satisfied this standard. First, Petitioner has not provided any evidence that he has been adjudicated mentally incompetent. Second, the record does not contain, and Petitioner has not provided, documentation supporting his statement that he has been housed in a residential treatment center while serving his sentence. Although the Superior Court noted in Petitioner's first Rule 61 proceeding that Petitioner was in a "mental facility for a short time in April 2005," the timing of his residence in that facility pre-dated the criminal charges leading to this Petition. Notably, Petitioner has not explained how being in a "mental facility" in April 2005 affected his ability to communicate with defense counsel during his criminal proceedings in 2006 or his ability to timely file a federal habeas petition sometime between May 2008 and June 2009. Third, the record indicates that Petitioner was capable of filing a timely Rule 61 motion during AEDPA's limitations period, and he initiated several other post-conviction motions after the denial of his first Rule 61 motion. Finally, Petitioner has not supported his allegations of

7

mental incompetency/mental illness with extrinsic evidence, such as evaluations or documentation of his medications.

Petitioner also appears to assert that his delay in filing should be excused because he is actually innocent due to the fact that he is mentally ill. In *McQuiggin v. Perkins*, the Supreme Court held that a credible claim of actual innocence may serve as an "equitable exception" that can overcome the bar of AEDPA's one-year limitations period. *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013). Nevertheless, "tenable actual-innocence gateway pleas are rare," and a petitioner only meets the threshold requirement by "persuad[ing] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* An actual innocence claim must be based on "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence [] that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). In the Third Circuit, evidence is "new" for the purposes of the *Schlup* standard only if it was not available at the time of trial and could not have been discovered earlier through the exercise of due diligence,[4] except in situations where that evidence was not discovered due to the ineffective assistance of trial counsel. *See Houck v. Stickman*, 625 F.3d 88, 93-94 (3d Cir. 2010). In turn, when determining if a petitioner's new evidence shows it is "more likely than not that no reasonable juror would have convicted him," a court must consider "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *House v. Bell*, 547 U.S. 518, 538 (2006).

---

[4]The circuits addressing the issue are split over what constitutes "new" evidence for *Schlup* purposes. The Eighth Circuit's interpretation of "new" evidence corresponds with the Third Circuit's, whereas the Seventh and the Ninth Circuits do not require the exercise of due diligence, and view "new" evidence as evidence that was not "presented" at trial. *See Kidd v. Norman*, 651 F.3d 947, 953 (8th Cir. 2011) (collecting cases).

Petitioner's assertion of actual innocence does not equitably toll the limitations period. As the Superior Court noted when denying Petitioner's first Rule 61 motion:

> [Defense counsel] has stated to the Court that he met with you several times in preparation for trial. He did not detect any signs of schizophrenia or any other mental problems. [Defense counsel] stated that you were well aware of what you were doing in turning down the State's plea offers and that you understood that you faced a minimum mandatory sentence of up to 24 years if you were convicted on all charges. His notes do not reflect that you ever told him you had a history of mental illness. [Defense counsel] frequently spoke to your grandmother, Rev. Janet Harmon, the chaplain of the V.A. Hospital, in the town of Elsmere, Delaware. Neither before or after trial did your grandmother refer to schizophrenia or any other mental illness you may have experienced. [Defense counsel] states that after trial but before sentencing, his colleague […] told him that you have mental problems.

*Lewis*, 2008 WL 1921762, at *1. Petitioner has not provided any new reliable evidence of his actual innocence, nor has he provided anything to rebut or even cast doubt on the Superior Court's findings. Thus, Petitioner's conclusory and unsupported assertion of innocence based on mental illness does not warrant equitable tolling.

For all of these reasons, the Court concludes that the doctrine of equitable tolling is not available to Petitioner on the facts he has presented. Accordingly, the Court will dismiss the instant Petition as time-barred.[5]

## III.     CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on procedural grounds without reaching the

---

[5] Having concluded that the instant Petition is time-barred, the Court will not address the State's alternate reason for denying the Petition.

9

underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court concludes that the instant Petition is time-barred. In the Court's view, reasonable jurists would not find this conclusion to be debatable. Therefore, the Court will not issue a certificate of appealability.

## IV.   CONCLUSION

For the reasons discussed, the Court will dismiss the Petition as time-barred. An appropriate Order will be entered.